BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
ERIC R. WOMACK
Assistant Branch Director
M. ANDREW ZEE (CA Bar No. 272510)
Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
450 Golden Gate Avenue, Room 7-5395
San Francisco, CA 94102
Telephone: (415) 436-6646
Facsimile: (415) 436-6632
E-mail: m.andrew.zee@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| CENTER FOR FOOD SAFETY *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> TOM VILSACK, in his official capacity as Secretary of the U.S. Department of Agriculture *et al.*, <br><br> Defendants. | No. 3:15-cv-01590-HSG <br><br> **DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM** <br><br> Hearing: September 2, 2015, 2:00 p.m. <br><br> Hon. Haywood S. Gilliam, Jr. |

*Center for Food Safety et al. v. Vilsack et al.*, No. 3:15-cv-01590-HSG
**Defendants' Motion to Dismiss**

## TABLE OF CONTENTS

NOTICE OF MOTION .................................................................................................. 1

STATEMENT OF THE ISSUES .................................................................................... 1

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

I.    THE ORGANIC FOODS PRODUCTION ACT ................................................ 2

        A.  The National List .................................................................................... 3

        B.  The Sunset Review and Renewal Process ............................................. 4

II.    PLAINTIFFS' ALLEGATIONS ........................................................................ 7

LEGAL STANDARD ..................................................................................................... 9

ARGUMENT ................................................................................................................... 9

I.    PLAINTIFFS CANNOT ESTABLISH SUBJECT MATTER JURISDICTION OVER THEIR COMPLAINT ............................................................................. 10

        A.  Plaintiffs have failed to allege an injury sufficient to establish Article III standing ................................................................................ 10

            1.  Plaintiffs' alleged injury from a lack of notice-and-comment rulemaking is a procedural injury in vacuo that does not confer standing.... 11

            2.  Plaintiffs' allegation of "weakened" organic standards is a speculative and hypothetical injury and not the concrete and actual injury that Article III standing demands ................................................................................... 13

        B.  The Sunset Notice is not "final agency action" that is judicially reviewable in this Court ....................................................................... 15

II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS' CLAIMS LACK MERIT ................................................................................... 17

        A.  Notice-and-comment rulemaking was not required because the Sunset Notice is a rule of agency organization, procedure, and practice ....................... 18

        B.  The Sunset Notice is consistent with the terms of the OFPA and is therefore not arbitrary or capricious ................................................... 19

CONCLUSION .............................................................................................................. 23

# TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................... 9, 20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................. 9

*Bennett v. Spear,*
    520 U.S. 154 (1997) ................................................................................... 15, 16, 17

*Carroll v. Nakatani,*
    342 F.3d 934 (9th Cir. 2003) ............................................................................ 13, 14

*City of San Diego v. Whitman,*
    242 F.3d 1097 (9th Cir. 2001) .................................................................................. 16

*Clapper v. Amnesty Int'l USA,*
    133 S. Ct. 1138 (2013) .............................................................................................. 13

*Clatskanie Peoples Util. Dist. v. Bonneville Power Admin.,*
    330 F. App'x 637 (9th Cir. 2009) ............................................................................. 11

*Ctr. for Food Safety v. Johanns,*
    451 F. Supp. 2d 1165 (D. Haw. 2006) ..................................................................... 16

*Ctr. for Sci. in the Pub. Interest v. Bayer Corp.,*
    No. C 09-05379 JSW, 2010 WL 1223232 (N.D. Cal. Mar. 25, 2010) .................... 14

*Dalton Equip. Co. v. Brown,*
    594 F.2d 195 (9th Cir. 1979) .................................................................................... 16

*Ecology Ctr., Inc. v. United States,*
    192 F.3d 922 (9th Cir. 1999) .................................................................................... 16

*Erringer v. Thompson,*
    371 F.3d 625 (9th Cir. 2004) .................................................................................... 18

*Glasser v. Nat'l Marine Fisheries Serv.,*
    360 F. App'x 805 (9th Cir. 2009) ............................................................................. 11

*In re Digimarc Corp. Derivative Litig.,*
    549 F.3d 1223 (9th Cir. 2008)..................................................................................... 9

*In re Gilead Sci. Sec. Litig.,*
    536 F.3d 1049 (9th Cir. 2008)..................................................................................... 9

*Indus. Customers of Nw. Utils. v. Bonneville Power Admin.*,
   408 F.3d 638 (9th Cir. 2004) ........................................ 16

*James V. Hurson Assocs. v. Glickman*,
   229 F.3d 277 (D.C. Cir. 2000) ...................................... 18

*JEM Broad. Co. v. FCC*,
   22 F.3d 320 (D.C. Cir. 1994) ........................................ 19

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ................................................... 9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................... *passim*

*Northcoast Envt'l Ctr. v. Glickman*,
   136 F.3d 660 (9th Cir. 1997) ....................................... 16

*Or. Natural Desert Ass'n v. United States*,
   465 F.3d 977 (9th Cir. 2006) ............................. 15, 16, 17

*Pickus v. U.S. Bd. of Parole*,
   507 F.2d 1107 (D.C. Cir. 1974) .................................... 18

*Project Sentinel v. Evergreen Ridge Apts.*,
   40 F. Supp. 2d 1136 (N.D. Cal. 1999) ............................. 14

*Pub. Util. Comm'r v. Bonneville Power Admin.*,
   767 F.2d 622 (9th Cir. 1985) ....................................... 16

*Rivers v. U.S. Dep't of Interior*,
   2006 WL 2841929 (W.D. Wash. Oct. 3, 2006) ................... 19

*S. Cal. Edison Co. v. FERC*,
   770 F.2d 779 (9th Cir. 1985) .................................. 18, 19

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2003) ....................................... 9

*Schmier v. U.S. Court of Appeals*,
   279 F.3d 817 (9th Cir. 2001) ............................. 13, 14, 15

*Sequoia Forestkeeper v. Tidwell*,
   847 F. Supp. 2d 1217 (E.D. Cal. 2012) ........................... 12

*Sierra Club v. Morton*,
   405 U.S. 727 (1972) ........................................... 14, 15

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ..................................... 11, 12, 14

*Ukiah Valley Med. Center v. FTC*,
    911 F.2d 261 (9th Cir. 1990) ............................................................. 17

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................... 11, 14

*Wilderness Soc'y v. Rey*,
    622 F.3d 1251 (9th Cir. 2010) ...................................................... 11, 12

**Federal Statutes**

5 U.S.C. § 553 ............................................................................ 10, 18

5 U.S.C. § 704 ............................................................................ 15, 17

5 U.S.C. § 706(2)(A) .............................................................. 19, 20, 23

7 U.S.C. § 6503 .................................................................................. 3

7 U.S.C. § 6504 .................................................................................. 3

7 U.S.C. § 6505 .................................................................................. 3

7 U.S.C. § 6510 .................................................................................. 3

7 U.S.C. § 6517 ......................................................................... *passim*

7 U.S.C. § 6518 ......................................................................... 3, 6, 21

**Federal Regulations**

7 C.F.R. §§ 205.601-205.604 .............................................................. 3

7 C.F.R. § 205.601(a)(1)(i) ................................................................. 3

7 C.F.R. § 205.602(h) ........................................................................ 3

7 C.F.R. § 205.607 ........................................................................ 7, 22

**Federal Register Notices**

65 Fed. Reg. 13,512 ........................................................................... 4

65 Fed. Reg. 80,548 ........................................................................... 4

70 Fed. Reg. 35,177 ........................................................................... 5

72 Fed. Reg. 2167 ......................................................................... 7, 21

78 Fed. Reg. 56,811- 56,816 ......................................................... *passim*

**Federal Rules**

Fed. R. of Civ. Proc. 12(b)(1) ..................................................... 1, 9, 23

Fed. R. of Civ. Proc. 12(b)(6) ................................................. 1, 9, 10, 23

1

### NOTICE OF MOTION

Defendants, Tom Vilsack, Secretary of the U.S. Department of Agriculture; Anne Alonzo, Administrator of the Agricultural Marketing Service; and Miles McEvoy, Deputy Administrator of the National Organic Program, all sued solely in their official capacities (collectively referred to as "USDA"), respectfully move this Court to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(1) or, in the alternative, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Pursuant to the Court's order approving the parties' scheduling stipulation, *see* ECF No. 12, Defendants respectfully request that this Motion be heard on September 2, 2015 at 2:00 p.m., or as soon as feasible thereafter.  USDA requests that this Court dismiss Plaintiffs' Complaint it its entirety because Plaintiffs lack standing to bring this action or, in the alternative, because Plaintiffs have failed to state a claim upon which relief can be granted.

### STATEMENT OF THE ISSUES

Whether Plaintiffs' allegations of injury confer standing to proceed in this Court as required by Article III of the Constitution; whether Plaintiffs have alleged "final agency action" subject to judicial review under the Administrative Procedure Act; in the alternative, whether USDA was required to provide formal notice and opportunity to comment before issuing the 2013 Sunset Notice; and whether USDA's issuance of the 2013 Sunset Notice is an arbitrary and capricious action in violation of the Administrative Procedure Act.

### INTRODUCTION

Plaintiffs, a group of organizations allegedly dedicated to the "integrity of the organic label," ask this Court to strike down a USDA notice that establishes the sunset review process for determining whether certain substances may be used in organic food production.  Plaintiffs neither identify nor challenge any actual decision by USDA to prohibit or allow any particular substance in organic food production.  Nor do Plaintiffs assert that such a decision by USDA related to any particular substance imminently threatens to harm them.  Instead, Plaintiffs present no more than an abstract disagreement with the procedural decisions that USDA—

*Center for Food Safety et al. v. Vilsack et al.,* No. 3:15-cv-01590-HSG
**Defendants' Motion to Dismiss**

consistent with the requirements of the Organic Foods Production Act—made in its September 2013 Sunset Notice.

Plaintiffs cannot establish subject matter jurisdiction to proceed in this Court. Their abstract theory of injury is contrary to long-established principles of standing requiring allegations of concrete and particularized injury and prohibiting a plaintiff from alleging a common injury that is shared in equal fashion by the overall public. Plaintiffs have failed to set forth allegations to satisfy the injury requirement of Article III standing. Nor can Plaintiffs, in this suit brought under the Administrative Procedure Act ("APA"), satisfy the requirement of "final agency action." USDA's Sunset Notice does not consummate the agency's decision making process; rather it establishes the procedures that the agency will follow in making such decisions in the future. The agency's decision to inform the public about its own procedures does not impact Plaintiffs' rights or obligations, as they have not alleged any actual decision by USDA or otherwise alleged that the Sunset Notice's process has been applied in a manner that would cause them harm. The Complaint should therefore be dismissed because subject matter jurisdiction is lacking.

Even were the Court to disagree with these jurisdictional defenses, the same outcome is warranted because Plaintiffs' claims fail on their merits. Despite conclusory assertions to the contrary, USDA's Sunset Notice is a procedural rule of the type that Congress specifically exempted from the notice-and-comment requirements that Plaintiffs contend apply. And the Sunset Notice does not violate the Organic Foods Production Act. Though Plaintiffs may disagree with some of the agency's decisions with respect to the sunset review process, they fail to identify any actual conflict between that process and the requirements of the Act. USDA committed no APA violation in issuing the Sunset Notice and Plaintiffs' Complaint should, in the alternative, be dismissed for failure to state a claim.

**BACKGROUND**

**I.     THE ORGANIC FOODS PRODUCTION ACT**

The Organic Foods Production Act of 1990 (the "Act" or "OFPA"), was enacted by Congress in part to establish national standards governing the marketing of certain agricultural

*Center for Food Safety et al. v. Vilsack et al.,* No. 3:15-cv-01590-HSG
**Defendants' Motion to Dismiss**

products as organically produced products. *See* Pub. L. No. 101-624, 104 Stat. 3935 (1990) (codified as amended at 7 U.S.C. §§ 6501-22).  In order to be sold or labeled as "organic," a product must be produced and handled without the use of synthetic substances, except as otherwise provided in the OFPA. 7 U.S.C. §§ 6504, 6505, 6510, 6517.  The Act authorizes the creation of the National Organic Program ("NOP") within USDA. *Id.* § 6503.  NOP, which is administered by the Agricultural Marketing Service ("AMS") of USDA, is responsible for setting the national standards called for by the Act, *see id.* § 6504, and also oversees the certification process for organic production and handling, *see id.* § 6503(d).  To assist NOP in the development of organic standards, the Act establishes a National Organic Standards Board (the "Board" or "NOSB") composed of fifteen members appointed by the Secretary of Agriculture. *Id.* § 6518(a)-(c).

### A.    The National List

The OFPA requires the Secretary of Agriculture to establish a "National List" of substances. *Id.* § 6517(a); *see also* 7 C.F.R. §§ 205.601-205.604.  This National List contains specific substances that are either (1) synthetic but permitted to be used in the production or handling of organic products (referred to in this memorandum as "exempted substances"); or (2) non-synthetic (*i.e.*, natural) but prohibited from use in organic products (referred to here as "prohibited substances").  *Id.* § 6517(c)(1)-(2).  For example, due to their presence on the National List, the synthetic substance ethanol may currently be used as an algicide in organic crop production, while strychnine, a non-synthetic substance, may not be used in organic crop production.  7 C.F.R. §§ 205.601(a)(1)(i), 205.602(h).  The Act tasks the NOSB with "develop[ing] the proposed National List or proposed amendments to the National List for submission to the Secretary." 7 U.S.C. §§ 6518(k)(2), 6518(*l*).

Of particular relevance to this case, section 6517(d) of the OFPA sets the procedure by which the National List is established and maintained.  When first created, the National List is to be "established" by the Secretary "based upon a proposed National List . . . developed by the [NOSB]." *Id.* § 6517(d)(1).  The Secretary may not include on the National List any exempted substances that are not contained in the proposed National List developed by the NOSB; in

*Center for Food Safety et al. v. Vilsack et al.*, No. 3:15-cv-01590-HSG
**Defendants' Motion to Dismiss**

other words, the Secretary may not exempt a synthetic substance unless the NOSB has also proposed to do so.  *Id.* § 6517(d)(2).  Nor may the National List include any substance whose presence in food is prohibited by federal regulation.  *Id.* § 6517(d)(3).  Before establishing the National List, USDA is required to publish it, in proposed form, in the Federal Register and provide the opportunity for public comment.  *Id.* § 6517(d)(4).  After evaluating all comments received, the Secretary must publish the final National List in the Federal Register.  *Id.* § 6517(d)(5).[1]

Amending the National List follows a process similar to its initial establishment.  Again, the National List, as amended, is to be established by the Secretary "based upon . . . proposed amendments to the National List developed by the [NOSB]," and the Secretary may not include any exempted substance not contained in the NOSB's proposed amendments.  *Id.* § 6517(d)(1)-(2).  Prior to formally amending the National List, the Secretary must provide public notice in the Federal Register of the proposed amendments and opportunity to comment.  *Id.* § 6517(d)(4).  And, as above, after evaluating all comments received, the Secretary publishes the final National List, as amended, in the Federal Register.  *Id.* § 6517(d)(5).

## B.    The Sunset Review and Renewal Process

Section 6517(e) of the OFPA, labeled "Sunset provision," provides that:

> No exemption or prohibition contained in the National List shall be valid unless the National Organic Standards Board has reviewed such exemption or prohibition as provided in this section within 5 years of such exemption or prohibition being adopted or reviewed and the Secretary has renewed such exemption or prohibition.

*Id.* § 6517(e).  Thus, to remain on the National List, any "exemption" (of a synthetic substance) or "prohibition" (of a natural substance) must, within five years of its initial adoption or subsequent review, both (1) be reviewed by the NOSB; and (2) be renewed by the Secretary.

---

[1] For example, the first iteration of the National list was published as a Proposed Rule on March 13, 2000.  *See* 65 Fed. Reg. 13,512 (Mar. 13, 2000).  The National List was finalized on December 21, 2000.  *See* 65 Fed. Reg. 80,548 (Dec. 21, 2000).

*Center for Food Safety et al. v. Vilsack et al.,* No. 3:15-cv-01590-HSG
**Defendants' Motion to Dismiss**

On September 16, 2013, USDA published the document challenged by Plaintiffs' Complaint: a notification of the sunset process entitled *National Organic Program—Sunset Process*. 78 Fed. Reg. 56,811 (Sep. 16, 2013). (USDA will refer to this document as the "Sunset Notice," consistent with Plaintiffs' Complaint.) The renewal process set forth in the Sunset Notice superseded the preexisting renewal process. *See National Organic Program, Sunset Review*, 70 Fed. Reg. 35,177 (June 17, 2005).

In the Sunset Notice, USDA explained that its purpose was "to improve public participation and transparency and ensure well-informed decision making about substances that are critical in organic production and handling." 78 Fed. Reg. at 56,815. The Sunset Notice provides detailed information about how the NOSB will conduct its review of substances and how USDA will fulfill its renewal obligations under § 6517(e). The Sunset Notice also explains the importance of timely completion of the sunset review and renewal process to minimize the disruption to a "wide array of raw and processed organic agricultural products." *Id.* at 56,812.

For those substances up for review and renewal pursuant to the OFPA's sunset provision, the Sunset Notice established an eight-step process. A summary of this process follows:

- At **Step 1**, USDA publishes on the NOP website the National List substances that are scheduled for sunset review in a given calendar year. USDA does so approximately two years in advance of the substances' potential expiration from the National List. 78 Fed. Reg. at 56,813.

- At **Step 2**, USDA announces in the Federal Register the first of two upcoming NOSB public meetings and requests public comment on each substance published at Step 1 to aid the Board in its upcoming sunset review. These public comments may be submitted in writing or in person at the NOSB first public meeting. *Id.*

- **Step 3** occurs at the NOSB's first public meeting: a NOSB Subcommittee presents to the full Board background information on each substance set for sunset review, along with any comments received concerning that substance. *Id.* at 56,813-14.

*Center for Food Safety et al. v. Vilsack et al.,* No. 3:15-cv-01590-HSG
**Defendants' Motion to Dismiss**

5

- Following the first NOSB public meeting, and during **Step 4**, the NOSB Subcommittee drafts a preliminary review of each substance, which is published on the NOP website. In the course of preparing a preliminary review, the relevant Subcommittee may determine that a substance should remain on the National List or that a substance should be considered for removal from the National List. *Id.* at 56,814. In the latter case, the Subcommittee must include in its preliminary review a proposal to remove the substance, for discussion at the second NOSB public meeting. *Id.*

- At **Step 5**, USDA publishes a second Federal Register notice announcing the second of the two NOSB public meetings and requesting comments on the preliminary reviews published on the NOP website. *Id.* As with the first meeting, comments can be submitted in writing or in person at the NOSB meeting. *Id.*

- **Step 6** occurs at the second NOSB public meeting. The Subcommittee presents for discussion by the full Board its preliminary review on each substance (and, if applicable, any proposal to remove a substance from the National List). *Id.* Following discussion of each substance, if the Subcommittee has included in its preliminary review a proposal to remove a substance from the National List and a member of the NOSB has moved to remove the substance, the NOSB may vote on such motion to remove. *Id.* Pursuant to 7 U.S.C. § 6518(i), a motion to remove must receive two-thirds of the votes cast in order to pass. After discussion of all substances set for sunset review is complete, and any motions have been voted upon, the NOSB's sunset review is complete. The NOSB Chair compiles all preliminary reviews and any recommendations for removal (*i.e.*, passed motions to remove) into a consolidated sunset review document, which it transmits to USDA for consideration. *Id.*

- At **Step 7**, USDA reviews the NOSB's consolidated document addressing each substance up for sunset review, including the preliminary reviews of each Subcommittee and any public comments received throughout the sunset review process. *Id.*

- At **Step 8**, USDA, if it elects to renew all substances that have undergone sunset review, will publish in the Federal Register a list of all substances that are renewed for another

*Center for Food Safety et al. v. Vilsack et al.,* No. 3:15-cv-01590-HSG
**Defendants' Motion to Dismiss**

five years on the National List.  *Id.*  The publication of this renewal document discharges the Secretary's obligation to renew substances pursuant to the OFPA's sunset provision, 7 U.S.C. § 6517(e).

These eight steps comprise the process for the NOSB's review and the Secretary's renewal of substance on the National List.  If the NOSB, in its consolidated document, has recommended removal of a substance from the National List, the OFPA authorizes USDA to take additional action.  Specifically, after considering the NOSB's recommendation, USDA may initiate a proposed removal of that substance from the National List. 78 Fed. Reg. at 56,814-15.  In this scenario, USDA submits the proposed removal for public comment, reviews the comments it receives, and determines whether to finalize the removal.  In the event that a substance's removal is finalized by publication of a final rule, that substance is removed from the National List and is no longer authorized (or prohibited) for use in organic food production and handling. *Id.* at 56,815.

Finally, through the National List petition process, which is distinct from the sunset review process, *see* 7 C.F.R. § 205.607, any individual or organization may petition the NOSB to have a substance "evaluated by the Board for recommendation to the Secretary for inclusion on or deletion from National List in accordance with the Act."  *Id.* § 205.607(a); *see also Notice of Guidelines on Procedures for Submitting National List Petitions*, 72 Fed. Reg. 2,167 (Jan. 18, 2007).  The National List petition process allows any individual, including members of the NOSB, to initiate potential amendments to the National List that may not be encompassed by the sunset review process.

## II.   PLAINTIFFS' ALLEGATIONS

According to the allegations of the Complaint, Plaintiffs are fourteen entities comprising non-profit organizations and organic producers and retailers who allege that they and their members (none of which are identified) "depend on the integrity of the organic label and suffer injury when it is weakened."  Compl. ¶ 54, ECF No. 1.  Plaintiffs assert that USDA's Sunset Notice "injures organic consumers, farmers, and producers, and impacts the rights of interested

*Center for Food Safety et al. v. Vilsack et al.,* No. 3:15-cv-01590-HSG
**Defendants' Motion to Dismiss**

persons by weakening the integrity of the National Organic Program and degrading the quality of organically labeled food." *Id.* ¶ 3. Throughout the 47 paragraphs describing the various alleged activities and interests of the Plaintiffs, their central allegations are that USDA's issuance of the Sunset Notice harms them and their members by "weakening organic integrity," "threaten[ing] . . . the public perception of organic integrity," and "creating inconsistent organic production standards." *Id.* ¶¶ 12, 16, 19, 23, 26, 28, 32, 37, 41, 46, 52.[2]   In certain places, Plaintiffs also allege that USDA's actions cause harm to third parties, by "undermin[ing] consumer trust" in the organic label. *Id.* ¶ 41; *see also id.* ¶¶ 19, 23, 26, 37, 48. Plaintiffs further allege procedural injuries, such as "depriv[ation] . . .of the opportunity to be heard" or lack of regard for "transparency and public engagement requirements." *Id.* ¶¶ 17, 32. Plaintiffs assert that these alleged injuries confer standing to bring this action. *Id.* ¶ 54.

Plaintiffs identify no allegedly unlawful *application* of the Sunset Process. They thus do not premise their injury on any actual implementation by USDA of its Sunset Process. Instead, Plaintiffs assert in their First Cause of Action that USDA's issuance of the Sunset Notice without notice-and-comment rulemaking violated the APA. Compl. ¶¶ 96-97. Plaintiffs also appear to contend that *future* application of the revised process announced by USDA in the Sunset Notice will lead to procedural deprivations that will, in turn, threaten the integrity of the organic label. *See id.* ¶ 96 ("[I]mplementation of the procedures and standards set forth within the Sunset Notice constitutes final agency action, which impacts the legal obligations of the public and causes injury to the organic community.").

In their Second Cause of Action, meanwhile, Plaintiffs contend that the Sunset Notice violates the OFPA's "overarching requirement to provide consistent organic production standards." Compl. ¶ 100. Again, Plaintiffs pointedly do not cite any specific application of the

---

[2] Certain Plaintiffs, such as the Organic Seed Growers and Trade Association and Greensward/New Natives LLC, do not identify any injury allegedly caused by USDA's issuance of the Sunset Notice. *See* Compl. ¶¶ 27-28, 47.

Sunset Process or particular substance that allegedly "weaken[s] the integrity of the organic label." *Id.* ¶ 101.

Plaintiffs seek a declaration from this Court that USDA's issuance of the Sunset Notice violated both the APA and the OFPA, and they seek to have this Court vacate the Sunset Notice and enjoin USDA from implementing the revised Sunset Process "until APA rulemaking requirements have been met." Compl., Request for Relief.

## LEGAL STANDARD

A Rule 12(b)(1) motion challenges the federal court's jurisdiction over the subject matter of the complaint. The party invoking the court's jurisdiction bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A Rule 12(b)(1) motion will be granted when, looking at the entirety of the complaint, its allegations fail to establish jurisdiction either facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). While in a facial attack, all material allegations are taken as true, the court does not assume the truthfulness of the allegations in a factual attack and may review evidence beyond the complaint without converting the motion into one for summary judgment. *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs' complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In reviewing a Rule 12(b)(6) motion, this Court accepts as true all well-pleaded facts in the complaint, but is not required to accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## ARGUMENT

Plaintiffs' Complaint should be dismissed under Rule 12(b)(1) because they have failed to allege an injury to themselves or their members sufficient to confer standing for purposes of

*Center for Food Safety et al. v. Vilsack et al.,* No. 3:15-cv-01590-HSG
**Defendants' Motion to Dismiss**

Article III jurisdiction.   They impermissibly attempt to proceed based on allegations of undefined injuries that are at best abstract and speculative and, moreover, are allegedly incurred by third parties such as members of the general public.   The Complaint is also subject to jurisdictional dismissal because the Sunset Notice is not "final agency action" subject to judicial review under the APA.   USDA has merely issued a notice describing the process it will use in the future; there is no allegation that this process has actually been implemented in a manner that consummately affects Plaintiffs' rights.   For either reason, subject matter jurisdiction is lacking and the Complaint should be dismissed.

In the alternative, Plaintiffs' Complaint should be dismissed under Rule 12(b)(6) because, even if they could successfully establish standing to bring their claims, those claims lack legal merit.   Formal notice-and-comment rulemaking was not required under the APA because the Sunset Notice is a rule of "agency organization, procedure, or practice" and therefore exempt from that requirement.   5 U.S.C. § 553(b)(3)(A).   Furthermore, the Sunset Notice is not arbitrary or capricious action in violation of the APA, as it is entirely consistent with the provisions of the OFPA.   Despite Plaintiffs' vague assertion that the Sunset Notice contravenes the OFPA's "overarching requirement" concerning organic standards, there is no conflict between the Act and USDA's stated process.   The Sunset Notice is consistent with and supported by the OFPA.   The Complaint must accordingly be dismissed for failure to state a claim.

## I.   PLAINTIFFS CANNOT ESTABLISH SUBJECT MATTER JURISDICTION OVER THEIR COMPLAINT.

### A.   Plaintiffs have failed to allege an injury sufficient to establish Article III standing.

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   As an element of "the irreducible constitutional minimum of standing," a "plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."   *Id.* (citations and quotation omitted).   "A

federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (quotation omitted).  An organizational plaintiff—like Plaintiffs here—must establish that it has either organizational standing based on alleged "injury to itself" or representational standing based on "alleg[ations] that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justifiable case had the members themselves brought suit."  *Id.* at 511.

"[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74.  "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."  *Warth*, 422 U.S. at 518. Because Plaintiffs have not met their burden of alleging a cognizable injury—either to themselves as organizations or to their members—this case must be dismissed for lack of standing.

1.    *Plaintiffs' alleged injury from a lack of notice-and-comment rulemaking is a procedural injury* in vacuo *that does not confer standing.*

The principal allegation of Plaintiffs' Complaint is that USDA's issuance of the Sunset Notice "without adherence to APA rulemaking requirements, including the offering of a public comment period, is arbitrary, capricious, and not in accordance with OFPA and the APA."  Compl. ¶ 91.  Even assuming that notice and an opportunity to comment were required under the APA— which they were not, *see infra* Section II.A—this alleged procedural harm cannot, on its own, sustain the Court's subject matter jurisdiction.

"[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009); *accord Wilderness Society, Inc. v. Rey*, 622 F.3d 1251, 1258 (9th Cir. 2010); *Glasser v. Nat'l Marine Fisheries Serv.*, 360 F. App'x 805, 806 (9th Cir. 2009); *Clatskanie Peoples Util. Dist. v. Bonneville Power Admin.*, 330 F. App'x 637, 638 (9th

Cir. 2009).   Irrespective of any procedural "right" under the APA to notice and opportunity to comment, "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers*, 555 U.S. at 497.   "[T]he injury-in-fact requirement" is not satisfied merely "by congressional conferral upon *all* persons of an abstract, self-contained, noninstrumental 'right' to have the Executive observe the procedures required by law." *Lujan*, 504 U.S. at 573.

The Ninth Circuit accordingly rejects the notion that an injury can be "sufficiently concrete and particularized" where "the harm was the loss of the opportunity to comment" without an "assert[ion] that any *specific* injury will occur," because such a "finding cannot be squared with the Supreme Court's analysis in *Summers*." *Wilderness Society*, 622 F.3d at 1257-58 (quotation omitted, emphasis added).   Plaintiffs have identified no "specific injury" that they contend will ensue as a result of the lack of opportunity to comment.   They do not, for instance, assert that, as a result of the sunset process, a particular substance that they produce is being removed from the National List or, for instance, that their economic interests are suffering from such a removal.   Nor do Plaintiffs specify any harm they are suffering, or imminently will suffer, due to the continued presence of any substance on the National List as a result of the Sunset Process.   Plaintiffs' challenge is instead to a "regulation in the abstract . . . apart from any concrete application that threatens imminent harm to [their] interests," and is therefore inadequate to establish Article III injury. *Summers*, 555 U.S. at 494; *Sequoia Forestkeeper v. Tidwell*, 847 F. Supp. 2d 1217, 1231 (E.D. Cal. 2012) (Article III standing requires, *inter alia*, that "the alleged injury must be tied to a *specific application* of the challenged regulations" (emphasis added)).

To create standing a procedural injury must "impair a separate concrete interest." *Lujan*, 504 U.S. at 572.   Plaintiffs have alleged none.   Because "deprivation of procedural rights, alone, cannot confer Article III standing," Plaintiffs' challenge to the Sunset Notice must be dismissed absent an allegation of some cognizable substantive injury. *Wilderness Society*, 622 F.3d at 1258.

1

2.   *Plaintiffs' allegation of "weakened" organic standards is a speculative*
2        *and hypothetical injury and not the concrete and actual injury that*
3        *Article III standing demands.*

4        Plaintiffs may attempt to argue in response that their allegation of "weakened" organic

5   standards satisfies the concrete injury requirement of Article III.   They would be mistaken.   To

6   satisfy the injury-in-fact requirement, "the plaintiff must have sustained a concrete injury, distinct

7   and palpable as opposed to merely abstract."   *Schmier v. U.S. Court of Appeals for the Ninth*

8   *Circuit*, 279 F.3d 817, 821 (9th Cir. 2002) (quotation omitted).   "And that injury must have actually

9   occurred or must occur imminently; hypothetical, speculative or other possible future injuries do

10  not count in the standings calculus."   *Id*.   The Ninth Circuit heeds "the Supreme Court's repeated

11  admonitions against taking jurisdiction over cases involving something less than a 'personal,'

12  'particularized' and 'concrete' injury."   *Id*. at 822.   In addition, "[t]he Supreme Court has repeatedly

13  refused to recognize a generalized grievance against allegedly illegal government conduct as

14  sufficient to confer standing."   *Carroll v. Nakatani*, 342 F.3d 934, 940 (9th Cir. 2003).

15       Rather than meeting the essential standing requirement of a concrete injury, Plaintiffs rest

16  their claims on a theory of "weakened organic integrity" and "inconsistent organic standards."

17  Nowhere, however, do Plaintiffs state that organic integrity has actually been weakened (let alone

18  been weakened in a "particularized" manner that causes harm uniquely to them).   Instead, they

19  advance the highly speculative claim that future implementation of the Sunset Process *may* result in

20  diminished public participation, which *may* in turn lead to the renewal or removal of particular

21  (unnamed) substances on the National List, which *may* cause a perceived loss of faith in the organic

22  label, which, one assumes, would then and only then possibly cause Plaintiffs some form of injury.

23  This type of hypothetical future injury is plainly insufficient to establish standing.   *Schmier*, 279

24  F.3d at 821; *see also Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013) (rejecting theory

25  of standing that "relies on a highly attenuated chain of possibilities").   Moreover, even if this

26  speculative injury were cognizable, diminished organic integrity—assuming such a thing could be

27  properly measured—is an undifferentiated harm to the public generally that is not specific to any

28

*Center for Food Safety et al. v. Vilsack et al.,* No. 3:15-cv-01590-HSG
**Defendants' Motion to Dismiss**

Plaintiff or its members.  The Supreme Court has made clear that this type of generalized harm is not adequate to establish Article III standing.  *Warth*, 422 U.S. at 499.

Plaintiffs' assertion that the Sunset Notice will lead to "inconsistent organic standards" fares no better.  They do not identify any organic standard that has been or is likely to be rendered "inconsistent" as a result of the Sunset Notice.  To the extent that Plaintiffs again speculate that such inconsistency will ensue as a result of the Sunset Process, they assert no more than hypothetical future injury for which the Supreme Court denies standing.  *See Summers*, 555 U.S. at 499 (explaining that standing "requires a factual showing of perceptible harm" and that "speculation does not suffice" (quotation and alteration omitted)).   Furthermore, Plaintiffs do not allege that such inconsistency—assuming it were to come about—would lead to any "concrete and particularized" injury to them  that is distinct from a generalized harm to the public.  *Lujan*, 504 U.S. at 560.  For instance, Plaintiffs do not identify any product or food which they produce or consume whose production would be affected by allegedly "inconsistent organic standards."

At its core, Plaintiffs' claim to standing is predicated on the allegation that their members and other "interested persons" "depend on the integrity of the organic label and suffer injury when it is weakened."  Compl. ¶¶ 3, 54.  This allegation is far from the concrete and particularized injury required under Article III, and this Court "should refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances."   *Carroll*, 342 F.3d at 940 (quotation omitted).  Indeed, Plaintiffs' challenge to the Sunset Notice "alleges nothing more than a setback to [Plaintiffs'] abstract social interest in" their speculative (and unilaterally imposed) notion of an appropriate measure of organic integrity.  *Project Sentinel v. Evergreen Ridge Apartments*, 40 F. Supp. 2d 1136, 1139 (N.D. Cal. 1999).  But, as courts have made clear, Plaintiffs' "mere interest in a problem is insufficient to demonstrate a cognizable injury sufficient to confer standing."  *Ctr. for Science in the Pub. Interest v. Bayer Corp.*, No. C 09-05379 JSW, 2010 WL 1223232, at *4 (N.D. Cal. Mar. 25, 2010) (citing *Sierra Club v. Morton*, 404 U.S. 727, 739 (1972)).  "[T]hat interest, unaccompanied by a showing that the application of [the Sunset Notice] had somehow personally and actually harmed [Plaintiffs], cannot alone constitute the injury-in-fact contemplated by the standing doctrine."  *Schmier*, 279 F.3d at 823.

*Center for Food Safety et al. v. Vilsack et al.,* **No. 3:15-cv-01590-HSG**
**Defendants' Motion to Dismiss**

14

The requirement of a concrete, individualized injury rightly prevents litigation by "organizations or individuals who seek to do no more than vindicate their own value preferences through the judicial process." *Sierra Club*, 405 U.S. at 740. Plaintiffs are "impermissibly trying to skirt the requirement . . . that [they] first incur an actual, personal injury *before* [they] argue[] on behalf of the public interest." *Schmier*, 279 F.3d at 823. This case must therefore be dismissed for lack of standing.[3]

## B.      The Sunset Notice is not "final agency action" that is judicially reviewable in this Court.

Assuming *arguendo* that Plaintiffs had alleged a cognizable injury, the Court would nonetheless lack jurisdiction over their claims because the Sunset Notice is not "final agency action" subject to judicial review under the APA.  *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."). Plaintiffs rightly do not allege that the OFPA or some other statute makes USDA's Sunset Notice judicially reviewable under § 704; hence, the "final agency action" requirement applies.  *See Lujan*, 497 U.S. at 882 ("When ... review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'" (citing 5 U.S.C. § 704)).

"For an agency action to be final, the action must (1) 'mark the consummation of the agency's decisionmaking process' and (2) 'be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). The "core question" in the finality inquiry is "whether the agency has completed its decisionmaking

---

[3] Even if Plaintiffs' allegations of injury were adequate to establish standing, those Plaintiffs who describe themselves as member organizations have failed to identify any of their individual members who would be in position to assert that standing. As for those Plaintiffs who allege a form of "organizational injury," the asserted injury is not specific to them but is merely an abstract disagreement on the proper measure of organic integrity that would be shared in equally by other members of the public.

*Center for Food Safety et al. v. Vilsack et al.*, No. 3:15-cv-01590-HSG
**Defendants' Motion to Dismiss**

1   process, and whether the result of that process is one that will directly affect the parties." *Id.*

2   (quotation omitted).

3           The first prong of the *Bennett* test is not met because the Sunset Notice is far from the

4   "consummation" of USDA's decisionmaking process.  Instead, it is merely a procedural measure

5   designed to inform the public of the process to be applied in *future* agency decisions concerning the

6   renewal or removal of substances on the National List.  *See Indus. Customer of Nw. Utils. v.*

7   *Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005) (agency action not final when it "is

8   merely the beginning of the decision-making process").  "An agency's decision to publicly share its

9   internal guidelines and policies does not automatically mean that 'final agency action' exists."

10  *Center for Food Safety v. Johanns*, 451 F. Supp. 2d 1165, 1189 (D. Haw. 2006); *see also*

11  *Northcoast Envt'l Ctr. v. Glickman*, 136 F.3d 660, 669-70 (9th Cir. 1998) (cited in *Center for Food*

12  *Safety* and rejecting final agency action argument in challenge to "overall" timber management plan

13  because plaintiff failed to challenge "site-specific actions").  Indeed, the alleged harms that

14  Plaintiffs contend will befall the organic community would only come about once "further steps"

15  are taken by USDA, namely the renewal of certain (unspecified) substances on the National List.

16  *See Dalton Equip Co. v. Brown*, 594 F.2d 195, 197 (9th Cir. 1979).

17          The Ninth Circuit has previously rejected claims of "final agency action" when all that is

18  challenged is the agency's process to be applied in future proceedings.  *See City of San Diego v.*

19  *Whitman*, 242 F.3d 1097, 1101 (9th Cir. 2001) (no final agency action when an EPA "letter

20  described the appeal process" but made clear that only the eventual decision by the agency appeals

21  board "would represent the consummation of the decision-making process"); *Public Utils. Comm'r*

22  *of Or. v. Bonneville Power Admin.*, 767 F.2d 622, 629-30 (9th Cir. 1985) (Kennedy, J.) (explaining

23  that withholding judicial review until final agency action has occurred "ensures against premature,

24  possibly unnecessary, and piecemeal judicial review" and avoids "disruption of the administrative

25  process").  These decisions rest on the basic ripeness principle that courts should refrain from

26  "prematurely adjudicating administrative matters until the proper agency has formalized its decision

27  making process." *Ecology Center, Inc. v. U.S. Forest Service*, 192 F.3d 922, 924 (9th Cir. 1999).

28

Moreover, only upon such future USDA renewals of specific identifiable substances would the second prong of *Bennett* be satisfied.   In the Ninth Circuit's formulation, "administrative orders are not final and reviewable unless and until they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process."  *Or. Natural Desert Ass'n*, 465 F.3d at 987 (quotations omitted).  By issuing the Sunset Notice, USDA has imposed no obligation on Plaintiffs, denied Plaintiffs no right, nor consummated the administrative process by fixing some legal relationship.  Nor do Plaintiffs allege in their Complaint that any of these triggers for finality have occurred.  Hypothetically, were Plaintiffs to have alleged that USDA completed its sunset review and renewed a particular substance, they would have a better claim to finality.  However, they have not done so.

Because the issuance of the Sunset Notice is not "final agency action" within the meaning of § 704 of the APA, the Court has no authority to review Plaintiffs' claims, and the Complaint should be dismissed for lack of subject matter jurisdiction.  *See Ukiah Valley Medical Ctr. v. FTC*, 911 F.2d 261, 264 n.1 (9th Cir. 1990) ("final agency action" is a jurisdictional requirement).

## II.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS' CLAIMS LACK MERIT.

Even if the Court disagrees with Defendants' position and concludes that it has subject matter jurisdiction over Plaintiffs' Complaint, it must nonetheless dismiss the Complaint because Plaintiffs have failed to state a claim upon which relief can be granted.  Plaintiffs' assertion that USDA violated the APA's notice-and-comment requirement ignores the fact that the APA specifically exempts procedural rules from that requirement.  And the Sunset Notice, which provides a detailed description of USDA's process for sunset review and renewal, falls squarely within the Ninth Circuit's definition of a procedural rule.  Meanwhile, Plaintiffs' claim that the Sunset Notice is arbitrary and capricious rests on a flawed understanding of the Sunset Notice and a misreading of the OFPA.  Plaintiffs have failed to state a meritorious legal claim in both their first and second Causes of Action, and the Complaint must be dismissed in its entirety.

*Center for Food Safety et al. v. Vilsack et al.,* No. 3:15-cv-01590-HSG
**Defendants' Motion to Dismiss**

17

**A.      Notice-and-comment rulemaking was not required because the Sunset Notice is a rule of agency organization, procedure, and practice.**

The APA generally requires that agencies notify the public of their proposed rules.  *See* 5 U.S.C. § 553(b) ("General notice of proposed rule making shall be published in the Federal Register . . . .").   When such notice is required under § 553(b), agencies must also "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation."  *Id.* § 553(c).   Section 553, however, explicitly exempts certain agency promulgations from the general notice requirement of § 553(b) (and thus also exempts them from the comment requirement of § 553(c)):

> Except when notice or hearing is required by statute, [section 553(b)] does not apply—
>
> (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or
>
> (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

*Id.* § 553(b).  Here, the relevant exemption is for "rules of agency organization, procedure, or practice," referred to in the case law as "procedural rules."  *Id.* § 553(b)(3)(A); *see, e.g.*, *Erringer v. Thompson*, 371 F.3d 625, 633 n.15 (9th Cir. 2004).

The Ninth Circuit has defined a procedural rule as one that "extends to 'technical regulation of the form of agency action and proceedings.'"  *S. Cal. Edison Co. v. FERC*, 770 F.2d 779, 783 (9th Cir. 1985) (quoting *Pickus v. U.S. Board of Parole*, 507 F.2d 1107, 1113 (D.C. Cir. 1974)).   Unlike so-called substantive rules, such procedural rules are exempt from the notice-and-comment requirements of the APA.   Further, even when a procedural rule has "substantive impact" on parties before an agency, it is nonetheless exempt from these requirements.  *Id.* at 782-83; *see also James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 317 (D.C. Cir. 2000) (procedural rule remains exempt from notice-and-comment even when it is

"especially burdensome" on "regulated parties").  In addition, as the D.C. Circuit explains, a procedural rule "covers agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency."  *JEM Broadcasting Co. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994) (quotation omitted).

Contrary to Plaintiffs' contentions, the Sunset Notice is a procedural rule, and USDA was not required to provide notice and an opportunity to comment prior to its issuance.  The Sunset Notice articulates "the process that NOSB will use to complete its responsibility to review substances" and "the process that [NOP] will use to complete the Secretary's responsibility to renew the National List."  78 Fed. Reg. at 56,812.  USDA provided detailed explanation of the eight-step process the agency would employ to fulfill the OFPA's mandate to conduct a review of National List substances.  7 U.S.C. § 6517.  The Sunset Notice simply effectuates technical changes to the form of sunset review proceedings under the OFPA, bringing it squarely within the Ninth Circuit's definition of a procedural rule.  *See S. Cal. Edison Co.*, 770 F.2d at 783; *Rivers v. U.S. Dep't of Interior*, 2006 WL 2841929, at *4 (W.D. Wash. Oct. 3, 2006)  (relying on *Southern California Edison* and finding a rule procedural when it "establish[ed] procedures for conducting the agency trial-type hearings" including "rules for pre-hearing discovery, hearing procedures, and the like").

**B.     The Sunset Notice is consistent with the terms of the OFPA and is therefore not arbitrary or capricious.**

Plaintiffs assert in their second Cause of Action that the Sunset Notice violates the APA because it is "arbitrary and capricious" and "not in accordance with law."  Compl. ¶ 100; 5 U.S.C. § 706(2)(A) (authorizing  courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").  Plaintiffs' essential argument is that the Sunset Notice is "not in accordance with" the OFPA because it violates an "overarching requirement" of that statute to provide consistent organic production standards.  Compl. ¶ 100.  Yet Plaintiffs fail to advance this claim beyond a level of generality vaguely targeting this "overarching requirement."  They do not connect the revised sunset process with

any specific provision of the OFPA, choosing instead to identify aspects of the new process that conflict not with the Act, but with potential outcomes they dislike.   Therefore, even assuming that the claim satisfies notice pleading requirements, *see Iqbal*, 556 U.S. at 678-79, Plaintiffs' § 706(2)(A) claim must fail because it lacks any concrete allegations that USDA has deviated from any specific provision or requirement of the OFPA.

Plaintiffs assert that there are "numerous substantive issues within the rule that did not comply with OFPA."  Compl. ¶ 87.  Plaintiffs further allege that the Sunset Notice "imposed new, mandatory standards" that are allegedly at odds with the OFPA.  Compl. ¶¶ 84, 86.  Plaintiffs are wrong.  To begin with, they do not identify the provisions of the Act with which the Sunset Notice allegedly conflicts.  Additionally, though Plaintiffs allude repeatedly to "numerous" concerns with the Sunset Notice, they identify in bullet points only the five they view as "most problematic."  *Id.* ¶¶ 86, 87.  As the below analysis demonstrates, none of these allegedly "problematic" "issues" violate the OFPA or otherwise constitute agency action "not in accordance with law."  5 U.S.C. § 706(2)(A).

In their **first** bullet point of paragraph 86, Plaintiffs complain that, pursuant to the terms of the Sunset Notice, Subcommittees, rather than the full NOSB, conduct the sunset review when there is no proposal to remove a substance.  *Id.* ¶ 86.  Although Plaintiffs unilaterally view this development as "problematic," they identify no provision of the OFPA with which this conflicts.  No provision of the OFPA prohibits the use of Subcommittees in the sunset review process.  Moreover, Plaintiffs' allegation that the full NOSB is uninvolved in the review process mischaracterizes the Sunset Notice.  It ignores the fact that at step 3, the full NOSB "may identify and discuss key issues about a substance that needs further examination" during the Subcommittee's review.  78 Fed. Reg. at 56,813-14.  Furthermore, at step 6 and during its second public meeting, the full NOSB holds a discussion after receiving from each Subcommittee a summary of the preliminary review and public comments on each substance.  Additionally, at this meeting, the full NOSB also "discusses the overall review of substances under their consideration."  *Id.* at 56,814.

*Center for Food Safety et al. v. Vilsack et al.,* No. 3:15-cv-01590-HSG
**Defendants' Motion to Dismiss**

In Plaintiffs' **second** bullet point, they speculate that the "no additions" provision of 7 U.S.C. § 6517(d)(2) "may" be violated because, they argue, there would be no "decisive vote" of the full NOSB prior to USDA's renewal of a particular substance on the National List. Compl. ¶ 86.   Plaintiffs misread § 6517(d)(2).   That provision applies not to renewals of substances already present on the National List, but only to the initial inclusion of a substance or to proposed amendments to the National List.   Section 6517(e) is the provision that governs the agency's sunset review.   That subsection requires only that the NOSB "review[]" an existing substance prior to renewal, which is consistent with the process established in the Sunset Notice. 7 U.S.C. § 6517(e).   And, contrary to Plaintiffs' contention, section 6517(e) imposes no requirement of a "decisive vote" by the NOSB as part of its review.

Plaintiffs' **third** bullet point asserts that the Sunset Notice establishes a default retention standard, as opposed to a default expiration standard.   Compl. ¶ 86.   Under the OFPA, whether to renew a substance on the National List has always been solely within the authority of the Secretary, irrespective of the NOSB's review and recommendation.   *See* 7 U.S.C. § 6517(e). That remains unchanged by the Sunset Notice.   Plaintiffs' assertion of a "default retention standard" exaggerates the statutory effect of the NOSB's sunset review process, which requires only "review[]" by the NOSB prior to the Secretary's determination.   *Id.*   The specter of a "default retention standard" is a straw man that ignores the role of the Secretary in the sunset review process and reads into the OFPA requirements that Congress did not enact.   Moreover, the Sunset Notice is consistent with the procedure for removal of a substance from the National List on petition of interested party.   78 Fed. Reg. at 56,815.   To grant such a petition, a two-thirds vote is required.   *Id.*; *see also* 7 U.S.C. § 6518(i).[4]   Accordingly, the Sunset Notice increases agency consistency by aligning the process with other similar provisions in the Act.

---

[4] *See also National Organic Program—Submission of Petitions of Substances for Inclusion on or Removal From the National List*, 72 Fed. Reg. 2,167 (Jan. 18, 2007); National Organic Program, *How to File a Petition, available at* http://www.ams.usda.gov/AMSv1.0/ams. fetchTemplateData.do?template=TemplateN&navID=NationalOrganicProgram&leftNav=Nation alOrganicProgram&page=NOPFilingaPetition&description=Filing%20a%20Petition.

*Center for Food Safety et al. v. Vilsack et al.,* No. 3:15-cv-01590-HSG
**Defendants' Motion to Dismiss**

21

In their **fourth** bullet point, Plaintiffs assert that the public's opportunity to provide input in the sunset process occurs only at the "first publication and meeting." Compl. ¶ 86. Setting aside whether such a process would be permissible under the APA, Plaintiffs are in any event mistaken. The public is invited to submit comments not only at steps 2 and 3 of the process, but also at steps 5 and 6, after each Subcommittee publishes its preliminary review and during the second NOSB public meeting. 78 Fed. Reg. at 56,814 ("In advance of the second NOSB meeting, the public can respond to this Federal Register document [the announcement of the meeting and preliminary review] by submitting written comments on the substances undergoing review."); *id.* ("At the NOSB meeting, the public can also provide in-person comments to NOSB on these substances."). Further, if USDA seeks to remove any substance from the National List, the public is afforded an additional opportunity to comment. *Id.* at 56,815. As for Plaintiffs' contention that public input favoring removal of a substance will be considered untimely if submitted after the first public meeting, the agency reasonably established a cutoff for when new information could be submitted in connection with the NOSB's review process. Doing so allows the NOSB sufficient time to consider comments prior to finalizing its sunset review, including voting on any motion to remove a substance. Further, as USDA made clear in the Sunset Notice, an individual may at *any time* file a petition to remove the substance from the National List if they have information they believe supports removal. *See* 78 Fed. Reg. at 56,814; 7 C.F.R. § 205.607.

In the **fifth** and final bullet point, Plaintiffs contend that the Sunset Notice is "problematic" because it allegedly shifts the burden to the public to demonstrate why an exempted substance should be removed from the National List. According to Plaintiffs, this "removes the incentive for the organic industry to seek and develop materials that are truly organic and do not require an exemption." Compl. ¶ 86. This pure policy argument has no bearing on whether the Sunset Notice is a procedural rule or otherwise violates the OFPA. Notably, Plaintiffs cite no provision of the Act with which this alleged burden-shifting is at odds, even if one were to assume it to be true. Further, the OFPA does not cap the National List at a certain number of exempted substances or otherwise require the National List to be as small

1  as possible. Oddly, in this bullet point, Plaintiffs appear to criticize the expanded opportunity
2  for the public to comment on the National List, after previously asserting that the public's
3  participation has been muted.

4      In sum, contrary to Plaintiffs' contentions, none of the alleged shortcomings of the
5  Sunset Notice amount to agency action "not in accordance with law." 5 U.S.C. § 706(2)(A).

6                                          **CONCLUSION**

7      This Court lacks subject matter jurisdiction and, as a result, Plaintiffs' Complaint must
8  be dismissed pursuant to Rule 12(b)(1). In the alternative, in the event the Court determines it
9  has jurisdiction over this case, Plaintiffs have failed to state a claim upon which relief can be
10 granted and their Complaint should be dismissed pursuant to Rule 12(b)(6).

12  Dated: July 17, 2015.                    Respectfully submitted,

13                                           U.S. DEPARTMENT OF JUSTICE
14                                           BENJAMIN C. MIZER
                                             Principal Deputy Assistant Attorney General
15                                           ERIC R. WOMACK
                                             Assistant Branch Director

16                                              */s/ Andrew Zee*
17                                           M. ANDREW ZEE (CA Bar No. 272510)
                                             Attorney
18                                           Civil Division, Federal Programs Branch
                                             U.S. Department of Justice

19                                           *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of July, 2015, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing.


_____*/s/ Andrew Zee*_____
M. ANDREW ZEE