1

2

3

4                       UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    CENTER FOR FOOD SAFETY, et al.,              Case No.  15-cv-01590-HSG

                    Plaintiffs,
8                                                 **ORDER GRANTING MOTION TO
          v.                                      DISMISS**
9
                                                  Re: Dkt. No. 16
     TOM VILSACK, et al.,
10
                    Defendants.
11

12          Pending before the Court is Defendants' Motion to Dismiss the Complaint for Lack of

13   Subject Matter Jurisdiction.  *See* Dkt. No. 16.  The Court has carefully considered the parties'

14   arguments and, for the reasons set for below, **GRANTS** Defendants' Motion.

15   **I.    FACTUAL BACKGROUND**

16          This case arises from a notice promulgated by the United States Department of Agriculture

17   ("USDA") which alters the review process for determining which substances may be used in food

18   certified as "organic" under the Organic Foods Production Act ("OFPA").  The OFPA requires the

19   Secretary of Agriculture to establish a "National List" of substances that fall into either of two

20   groups: (1) synthetic substances permitted to be used in organic products; or (2) non-synthetic

21   substances prohibited from use in organic products.  7 U.S.C. § 6517(b)-(c).  The OFPA requires

22   the National Organic Standards Board ("NOSB"), which is composed of fifteen members

23   appointed by the Secretary of Agriculture, to develop the National List for submission to the

24   Secretary.  The Secretary cannot exempt a synthetic substance unless the NOSB proposes to do so.

25   7 U.S.C. § 6517(d).

26          The OFPA also contains a "sunset provision," which provides that no substances on the

27   National List are "valid unless the [NOSB] has reviewed such exemption or prohibition as

28   provided in this section within 5 years."  7 U.S.C. § 6517(e).  Prior to the notice that triggered this

United States District Court
Northern District of California

United States District Court
Northern District of California

1    lawsuit, USDA's regulations required the NOSB to consider public comments and vote on "the

2    continuation of specific exemptions and prohibits contained on the National List."  NOP, Sunset

3    Review, 70 Fed. Reg. 35,177 at 35,178 (June 17, 2005).  Under that framework, a vote of two-

4    thirds of the NOSB was required to recommend that a substance be renewed.  *See* 7 U.S.C. §

5    6518(i).  If two-thirds of the NOSB did not favor renewal, the substance was removed from the

6    National List.

7        The USDA's September 16, 2013 notice enacted a new eight-step sunset review procedure.

8    NOP, Sunset Process, 78 Fed. Reg. 56,811, 56,812 (Sept. 16, 2013).  Under the new framework,

9    the entire NOSB does not vote on the renewal of each substance on the National List.  78 Fed.

10   Reg. at 56,814.  Instead, a NOSB subcommittee reviews each substance set for sunset review and

11   proposes substances to be removed from the National List to the full NOSB.  *Id*.  It is only those

12   substances that a member of the NOSB subcommittee proposes to be removed that are voted upon

13   by the full NOSB.  *Id*.  Significantly, because of this change to the review procedure, Plaintiffs

14   allege that a two-thirds vote is now required remove a substance from the National List (as

15   opposed to renew its inclusion).  Plaintiffs (approximately a dozen advocacy and industry groups

16   representing organic farmers, retailers, and consumers) filed this action seeking declaratory and

17   injunctive relief that vacates the September 16, 2013 Rule on the basis that the USDA

18   promulgated the regulation without providing the public the opportunity for notice and comment.

19   Dkt. No. 1.

20   **II.    DISCUSSION**

21       To establish standing, a plaintiff must show that "(1) he or she has suffered an injury in

22   fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to

23   the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision."

24   *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1224 (9th Cir. 2008) (citing

25   *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  In deciding whether a plaintiff has made

26   this showing, the court is to "accept as true all material allegations of the complaint" and "construe

27   the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th

28   Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

1    The Supreme Court recently considered the standing of an organizational plaintiff to

2    challenge the type of procedural regulations at issue in this case. *See Summers v. Earth Island*

3    *Institute*, 555 U.S. 488, 493 (2009). In *Summers*, the Supreme Court found the plaintiffs (a group

4    of organizations dedicated to protecting the environment) lacked standing to challenge regulations

5    setting forth the post-decisional appeals process of the Forest Service because they had failed to

6    identify an "application of the . . . regulation that threaten[ed] imminent and concrete harm to the

7    interests of [its] members." *Summers*, 555 U.S. at 488.

8    > To seek injunctive relief, a plaintiff must show that he is under
9    > threat of suffering "injury in fact" that is concrete and particularized;
     > the threat must be actual and imminent, not conjectural or
10   > hypothetical; it must be fairly traceable to the challenged action of
     > the defendant; and it must be likely that a favorable judicial decision
11   > will prevent or redress the injury.

12   *Id*. at 495. Instead, the Supreme Court found that plaintiffs' showing was "not tied to application

13   of the challenged regulations, because it [did] not identify any particular site, and because it

14   relate[d] to past injury rather than imminent future injury that is sought to be enjoined." It

15   reasoned that "when the plaintiff is not himself the object of the government action or inaction he

16   challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to

17   establish," *id*. at 493 (citation omitted), and expressly rejected the theory that the procedural

18   deprivation of the opportunity to comment was sufficient to confer standing absent the deprivation

19   of a concrete interest:

20   > Respondents argue that they have standing to bring their challenge
     > because they have suffered procedural injury, namely that they have
21   > been denied the ability to file comments on some Forest Service
     > actions and will continue to be so denied. But deprivation of a
22   > procedural right without some concrete interest that is affected by
     > the deprivation—a procedural right *in vacuo*—is insufficient to
23   > create Article III standing. Only a "person who has been accorded a
     > procedural right to protect his concrete interests can assert that right
24   > without meeting all the normal standards for redressability and
     > immediacy."
25

26   *Id*. at 496 (emphasis in original) (citation omitted).

27        The sunset review regulations at issue in this case bear no meaningful distinction (for

28   purposes of standing) from the Forest Service appellate procedures at issue in *Summers*. In both

United States District Court
Northern District of California

3

1   cases, "[t]he regulations under challenge here neither require nor forbid any action on the part of

2   [plaintiffs].  The standards and procedures that they prescribe for [agency] govern only the

3   conduct of [agency] officials . . . ." *Id.*  Accordingly, Plaintiffs generalized concern that the

4   USDA's new sunset review procedures, when applied in the future, will "weaken[ ] organic

5   integrity, creat[e] inconsistent organic production standards, and demonstrat[e] arbitrary and

6   capricious application of administrative functions," Compl. ¶ 12, is simply not sufficient.   As in

7   *Summers*, Plaintiffs must identify an *application* of the sunset review procedures that threatens a

8   concrete, particularized, injury in fact.  The Plaintiffs' complaint identifies no such application.[1]

9          *Harvey v. Veneman*, 396 F.3d 28 (1st Cir. 2005), the decision upon which Plaintiffs largely

10  rely, does not stand for a different proposition.  In *Harvey*, the First Circuit held that the plaintiff

11  (a producer and handler of organic crops) satisfied the Article III standing requirement because he

12  challenged specific provisions of a USDA final rule that "degrade[d] the quality of organically

13  labeled foods."  *Id*. at 34.  Plaintiffs did not plead the same here.  In this case, the Plaintiffs argue

14  that the procedural sunset review procedures—when applied *in the future*—will cause a

15  weakening of the organic label by making it more difficult to remove exempted substances from

16  the National List.  But even setting this factual distinction aside, Plaintiffs' reading of *Harvey*

17  would necessarily contradict the Supreme Court's decision in *Summers*, which this Court is

18  required to follow.

19         Nor does Plaintiff's submission of a recent decision from another court in this District alter

20  the Court's analysis.  On October 1, 2015, Plaintiffs alerted the Court to Judge Corley's

21  September 29, 2015 order denying the Department of Agriculture's motion to dismiss for lack of

22  standing the plaintiff environmental organizations' challenge to a different organic-related

23

24  [1] Plaintiffs' opposition represents that the sunset review procedures challenged in this lawsuit have
resulted in a synthetic chemical remaining on the National List when, under the original regime,
that chemical would have failed to be renewed.  *See* Opp. at 2 (discussing consideration of
25  Aqueous Potassium Silicate under the new sunset review procedure).  While this type of allegation
could very well form the basis for Plaintiffs' Article III standing, the Court cannot consider factual
26  allegations raised for the first time in an opposition.  *See, e.g., Schneider v. Cal. Dep't of
Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) ("The 'new' allegations contained in the . . .
27  opposition motion . . . are irrelevant for Rule 12(b)(6) purposes.  In determining the propriety of a
Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers,
28  such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original).

United States District Court
Northern District of California

regulation.  *See Center for Environmental Health, et al. v. Vilsack, et al.*, No. 15-cv-01690-JSC (N.D. Cal. Sept. 29, 2015) (Dkt. No. 41).  In that case, plaintiffs challenged a regulation that permitted organic production systems to contain two residential insecticides under certain circumstances.  *Id.* at 3.  In other words, the regulation actually changed the status of *particular* substances, which Judge Corley found supported the allegation that the regulation "undermines the labeling of a product as organic such that [organizational members] will now have to undertake additional concrete steps to ensure that the products they consume do not contain synthetic materials."  *Id*. at 15.  In contrast, Plaintiffs' Complaint in this case does not allege that the challenged regulation actually affected the status of a particular substance or substances.  More is required under *Summers*.

Accordingly, the Court finds that Plaintiffs have not pled facts sufficient to demonstrate standing.

### III.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** and Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE**.  Plaintiffs may file a First Amended Complaint no later than 21 days from the date of this order.

**IT IS SO ORDERED.**

Dated: October 9, 2015

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge