UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR FOOD SAFETY, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>TOM VILSACK, et al.,<br><br>　　　　　Defendants. | Case No. 15-cv-01590-HSG<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 53 |

Pending before the Court is Defendants' motion to dismiss the first amended complaint ("FAC") for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 53. The Court has carefully considered the parties' arguments and, for the reasons set forth below, DENIES Defendants' motion.[1]

**I.　FACTUAL BACKGROUND**

This case arises from a notice promulgated by the United States Department of Agriculture ("USDA") which alters the review process for determining which substances may be used in food certified as "organic" under the Organic Foods Production Act ("OFPA"). The OFPA requires the Secretary of Agriculture to establish a "National List" of substances that fall into either of two groups: (1) synthetic substances permitted to be used in organic products; or (2) non-synthetic substances that may not be used in organic products. 7 U.S.C. § 6517(b)-(c). The OFPA requires the National Organic Standards Board ("NOSB"), which is composed of fifteen members appointed by the Secretary of Agriculture, to develop the National List for submission to the Secretary. The Secretary cannot exempt a synthetic substance unless the NOSB proposes to do so.

---

[1] The Court finds this motion suitable for disposition without oral argument, *see* Civ. L.R. 7-1(b).

7 U.S.C. § 6517(d).

The OFPA also contains a "sunset provision," which provides that no substances on the National List are "valid unless the [NOSB] has reviewed such exemption or prohibition as provided in this section within 5 years." 7 U.S.C. § 6517(e). Prior to the notice that triggered this lawsuit, USDA's regulations required the NOSB to consider public comments and vote on "the continuation of specific exemptions and prohibitions contained on the National List." NOP, Sunset Review, 70 Fed. Reg. 35,177 at 35,178 (June 17, 2005). Under that framework, a vote of two-thirds of the NOSB was required to recommend that a substance be renewed. *See* 7 U.S.C. § 6518(i). If two-thirds of the NOSB did not favor renewal, the substance was removed from the National List.

The USDA's September 16, 2013 notice enacted a new eight-step sunset review procedure. NOP, Sunset Process, 78 Fed. Reg. 56,811, 56,812 (Sept. 16, 2013). Under the new framework, the entire NOSB does not vote on the renewal of each substance on the National List. *Id.* at 56,814. Instead, a NOSB subcommittee reviews each substance set for sunset review and proposes to the full NOSB a list of substances to be removed from the National List. *Id.* It is only those substances that a NOSB subcommittee member proposes for removal that are voted upon by the full NOSB. *Id.* Significantly, because of this change to the review procedure, Plaintiffs allege that a two-thirds vote is now required to *remove* a substance from the National List (unlike the prior procedure, under which a two-thirds vote was required to *renew* a substance). Plaintiffs (approximately a dozen advocacy and industry groups representing organic farmers, retailers, and consumers) filed this action seeking declaratory and injunctive relief vacating the September 16, 2013 Rule, arguing that the USDA promulgated the regulation without providing the public the opportunity for notice and comment and acted in an arbitrary and capricious manner in violation of OFPA. Dkt. No. 1.

On October 9, 2015, the Court granted with leave to amend Defendants' motion to dismiss the complaint for failure to establish Article III standing. Dkt. No. 49. On October 30, 2015, Plaintiffs filed the FAC, Dkt. No. 50, which the Court considers here.

## II. LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(1) when the Court lacks subject matter jurisdiction over the claim. The plaintiff has the burden of establishing subject matter jurisdiction. *See Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007). There are two permissible jurisdictional attacks under Rule 12(b)(1): a facial attack, where the Court's inquiry is limited to the allegations in the complaint; and a factual attack, which permits the Court to look beyond the complaint at affidavits or other evidence. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

Dismissal is also appropriate under Rule 12(b)(6) where the plaintiff has failed to state a claim upon which relief can be granted. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## III. DISCUSSION

As a threshold matter, the Court considers whether the Plaintiffs have alleged sufficient facts to support Article III standing. Article III standing requires that "a plaintiff establish a (1) legally recognized injury, (2) caused by the named defendant that is (3) capable of legal or equitable redress." *See Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 820-21 (9th Cir. 2002). Additionally, "an association or organization has standing when '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Cottonwood Envtl. Law Ctr. v.*

*U.S. Forest Serv.*, 789 F.3d 1075, 1079 (9th Cir. 2015). "The plaintiff bears the burden of proof to establish standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "When, as here, the plaintiff defends against a motion to dismiss at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, because we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal quotation marks omitted).

Plaintiffs have alleged two injuries. In the first cause of action, Plaintiffs contend they were deprived of public notice and the opportunity to comment before Defendants implemented the revised sunset notice, in violation of the Administrative Procedure Act ("APA"), FAC ¶¶ 106, 117-22. In the second cause of action, Plaintiffs allege the changes to the sunset review procedures violated the OFPA, FAC ¶¶ 107-16.

### A.  APA Claim

The first cause of action alleges a procedural injury. The initial question is whether the Supreme Court's decision in *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009), changed the test in this circuit for establishing standing to challenge an alleged procedural injury. Having examined post-*Summers* Ninth Circuit authority, the Court concludes that it did not. Although the reasoning of *Summers* could be read to call into question a plaintiff's ability to establish Article III standing in cases like this one, *see id.* at 496-97, the Ninth Circuit has continued to find standing in cases involving alleged procedural injuries. For example, in *Cottonwood*, the plaintiff "was not required to challenge directly any specific project" because the procedural injury was complete when the agency decided not to reinitiate consultation. 789 F.3d at 1081. The *Cottonwood* court noted that its decision was "not the first time [post-*Summers*] we have held that a plaintiff has standing to challenge programmatic management direction without also challenging an implementing project that will cause discrete injury." *Id.* Because the Ninth Circuit has repeatedly applied these standards in evaluating procedural injury claims post-*Summers*, this Court must as well.

To demonstrate injury-in-fact in procedural injury cases, "plaintiffs must establish that . . .

4

[the] violated procedural rules [are] designed to protect their concrete interests, and that the challenged action will threaten those interests." *California ex rel. Imperial Cty. Air Pollution Control Dist. v. U.S. Dep't of the Interior*, 767 F.3d 781, 789-90 (9th Cir. 2014); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 807 F.3d 1031, 1043 (9th Cir. 2015). "For procedural rights, [the Court's] inquiry into the imminence of the threatened harm is less demanding, and the causation and redressability requirements are relaxed." *California ex rel. Imperial Cty.*, 767 F.3d at 790 (internal quotation marks and citations omitted). Where a plaintiff is not "the object of government action or inaction, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Id.* at 789 (internal quotation marks and citations omitted).

Plaintiffs allege that the arbitrary and capricious rulemaking violated the concrete interests of "organic consumers, farmers, and producers" by weakening the integrity of the organic standards, degrading the quality of organically labeled food, and negatively affecting the personal health, economic, environmental, and consumer interests of Plaintiffs' members. FAC ¶¶ 3, 107. These interests are aligned with OFPA's enumerated purpose:

> It is the purpose of this chapter--
>
> (1) to establish national standards governing the marketing of certain agricultural products as organically produced products;
>
> (2) to assure consumers that organically produced products meet a consistent standard; and
>
> (3) to facilitate interstate commerce in fresh and processed food that is organically produced

7 U.S.C. § 6501. Plaintiffs allege that the promulgation of the sunset notice without advance notice and opportunity for comment deprived the public of the opportunity to inform the Secretary and NOSB of relevant scientific and market information and deprived the Secretary and NOSB of the benefit of hearing the strong objections to the proposed notice. FAC ¶ 98. Plaintiffs argue that had the agency followed the requisite notice and comment procedures, there would be an increased likelihood that the agency's revised sunset notice would have comported with the concrete interests the statute is intended to protect.

In support, each organizational Plaintiff attaches a declaration to the complaint to show that it is reasonably probable the revised procedure threatens their concrete interests. For example, they allege that as a result of the revised sunset provision Aqueous Potassium Silicate ("APS") remains in use in organic production, "weakening organic integrity and injuring Plaintiff members' personal health and consumer interests," Dkt. No. 57 at 2; FAC ¶¶ 101-02, 113-14.[2] They further allege that more than twenty other prohibited substances were not removed from organic food production to the detriment of Plaintiffs and their members.[3] *Id.* at 2; FAC ¶¶ 103-04; *see* FAC, Ex. B. Beyond Pesticides member Terry Shistar states that the "USDA's development and promulgation of the Sunset Notice . . . harms [her] interest in participating in the public process as outlined by the APA," and violates her "interest in ensuring that adequate procedures are in place to protect the integrity of organic food." FAC, Ex. A. at A-31, ¶¶ 8-9 (contending that the revised sunset notice undermines her "personal confidence in the National List" and diminishes the integrity of the organic label). PCC Natural Markets Director of Public Affairs Trudy Bialic emphasizes the importance of organic foods to her business and the need for public participation to ensure "both credibility of the organic label and public support for

---

[2] The FAC states that

> [a]s a result of Defendants' implementation of the Sunset Notice, at least one substance has been allowed in organic production that otherwise would have been phased out under the old process. As a result of Defendants' implementation of the Sunset Notice, [APS], a synthetic chemical widely used in non-organic agriculture as a preventive fungicide, miticide, and insecticide that makes food less digestible and nutritious, remains on the National List.

FAC ¶ 101.

[3] The FAC alleges that

> [t]hese substances include synthetic chemicals and prohibited natural substances whose continued uses in organic agriculture have negative environmental, ecological, and human health impacts. . . The Sunset Process and the resulting unlawful maintenance of these substances create an inconsistent organic standard that directly injures the personal health interests of Plaintiffs' members, who are sensitive to synthetic chemicals.

FAC ¶¶ 104-05.

organic products." *Id.* at A-36-37, ¶¶ 3-4.  Other members allege a curtailed ability to introduce new information for timely review, citing as an example the subcommittee's refusal to consider information about the health risks of overconsumption of inorganic phosphates at an April 2015 NOSB meeting. *Id.* at A-17, ¶ 12; *see also id.* at A-67 (alleging increased burden to advocate for removal of carrageenan in 2017 review, and alleging increased effort required to examine and avoid labels of organic products to see if carrageenan is included); *id.* at A-30 (alleging harm to ability to comment on proposed changes to process, as someone who regularly comments on proposed changes to the National List and NOSB's processes).

Plaintiffs sufficiently have alleged that these rules were intended to protect their concrete interests, and that it is "reasonably probable" that the challenged action will threaten those interests.  *See Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969 (9th Cir. 2003); *see also Ctr. for Biological Diversity*, 807 F.3d at 1043 (finding injury-in-fact requirement satisfied where members alleged "scientific, aesthetic, personal, spiritual and work-related interests in the continued survival of [a rare fish]," and the statute's consultation procedures were designed to protect such concrete interests by advancing "the overall goal of species preservation").  At this stage in the proceedings, the allegations are sufficient to establish injury-in-fact.  *See Legal Servs. Corp.*, 552 F.3d at 969; *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 917 (N.D. Cal. 2015) ("In ruling on a motion to dismiss for want of standing, the court must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party."), *appeal dismissed*  (Jan. 26, 2016).

Moreover, Plaintiffs satisfy the lessened causation and redressability requirements.  *See Citizens for Better Forestry*, 341 F.3d at 975 (holding that in the procedural injury context, "[o]nce a plaintiff has established an injury in fact . . . , the causation and redressability requirements are relaxed" (internal quotation marks omitted)).  "[T]he members must show only that they have a procedural right that, if exercised, *could* protect their concrete interests." *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 485 (9th Cir. 2011).  Plaintiffs allege that the revised sunset notice "reversed the default expiration standard provided for in 7 U.S.C. § 6517(e)" without consideration of the public's input.  FAC ¶ 91.  If Plaintiffs are provided an opportunity for public

notice and comment, then "the agency's decision *could be influenced* by the" considerations raised through public comment. *See Citizens for Better Forestry*, 341 F.3d at 975. Under *Citizens for Better Forestry* and other Ninth Circuit precedent, these allegations are sufficient to satisfy the causation and redressability requirements for the first cause of action.[4]

### B.   OFPA Claim

With respect to the second cause of action, Plaintiffs allege a substantive injury—violation of OFPA. They contend that the "Sunset Notice violates OFPA because it allows substances to remain on the National List without full board review, without a decisive vote to renew, and without renewal by the Secretary." FAC ¶ 133. They further contend that the sunset notice "violates OFPA because it limits public participation and publication of comments," *id.*, and that the notice "reversed the default expiration standard provided for in 7 U.S.C. § 6517(e)," *id.* at ¶ 92.

To establish injury-in-fact, a plaintiff must show

> that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Summers*, 555 U.S. at 493.

The Court finds that Plaintiffs have met this standard, as they allege a concrete and particularized harm resulting from the revised sunset procedure. They have cited specific substances (APS and twenty others listed in Exhibit B to the FAC) that they allege remain used in organic production because of the revised procedures. Dkt. No. 57 at 2; FAC ¶¶ 101-02, 113-14. Additionally, they contend that as a result of the continued presence of these substances on the National List, Plaintiffs must use increased effort to advocate for changes to the National List because of the changed default standard. In particular, Plaintiffs cite the NOSB's upcoming

---

[4] Plaintiffs also meet the additional organizational requirements of standing, which Defendants do not appear to contest. As organizations, Plaintiffs meet the requirements for suing on behalf of their members who have standing: the issues at stake are germane to the interests of Plaintiffs, and nothing indicates that resolving this case would require or even be aided by the participation of their individual members. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

review of carrageenan in 2017, and the increased burden to advocate for removal. FAC, Ex. A. at A-67. These allegations establish impending and actual harm sufficient at the motion to dismiss stage to establish injury-in-fact.

Moreover, the Court finds causation and redressability satisfied. The increased burden on advocacy and the increased diligence required to evaluate foods in the marketplace are allegedly caused by the revised sunset notice under OFPA. And should the Court vacate the revised sunset notice, Plaintiffs' injuries would be redressed because substances like carrageenan would automatically expire absent NOSB review and renewal. For these reasons, Plaintiffs have standing to pursue their second cause of action as well.

\*   \*   \*

Defendants seek to dismiss the complaint on additional bases. To begin with, Defendants move to dismiss by (1) presenting a facial challenge to Plaintiffs' subject matter jurisdiction, asserting that the sunset notice is not a final agency action, and (2) arguing the first cause of action fails to state a claim because the sunset notice is a procedural rule and thus exempted from the notice and comment requirement. The Court denies the motion to dismiss on both bases, finding resolution of the former jurisdictional question intertwined with resolution of the latter merits-based question and thus inappropriate to decide at the motion to dismiss stage.

The Ninth Circuit has held that a "[j]urisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "[T]he question of jurisdiction and the merits of an action will be considered intertwined where, as here a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (internal quotation marks omitted); *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733-34 (9th Cir. 1979) (noting that under the Sherman Act, where "the interstate commerce requirement is tied to the merits as well as to the jurisdictional aspects of an antitrust case," the interstate commerce requirement should be addressed on summary judgment).

1    Such an overlap exists here. To determine where the sunset notice is a final agency action
2    under 5 U.S.C. § 704, the Court must examine (1) whether the action marks the consummation of
3    the agency's decisionmaking process, and (2) whether the action is one by which rights or
4    obligations have been determined or from which legal consequences flow. *Pac. Coast Fed'n of*
5    *Fishermen's Ass'ns v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1033 (9th Cir. 2001).
6    Moreover, certain factors "provide an indicia of finality, such as 'whether the [action] amounts to
7    a definitive statement of the agency's position, whether the [action] has a direct and immediate
8    effect on the day-to-day operations of the party seeking review, and whether immediate
9    compliance [with the terms] is expected.'" *Indus. Customers of Nw. Utilities v. Bonneville Power*
10   *Admin.*, 408 F.3d 638, 646 (9th Cir. 2005).

11   Under the first cause of action, the Court must answer similar questions in determining
12   whether the sunset notice is a procedural rule (that is to say, an "interpretative rule[], general
13   statement[] of policy, or rule[] of agency organization, procedure, or practice,"), and thus
14   exempted from 5 U.S.C. § 533's notice and comment requirement. Plaintiffs contend that because
15   the revised sunset notice amended a prior legislative rule that the agency promulgated after notice
16   and comment, they have plausibly alleged that the revised sunset notice was also a substantive rule
17   requiring notice and comment. Dkt. No. 57 at 18-19.

18   Because resolving these issues will require an examination of these overlapping questions,
19   the Court concludes the determination of whether there is final agency action and the merits of the
20   first cause of action are better suited for resolution after discovery, with the benefit of a full
21   administrative record, at summary judgment.[5]

22   Finally, Defendants move to dismiss the first and second causes of action for failure to
23   state a claim for relief. As discussed *supra*, the first cause of action alleges a violation of the

---

[5] The Court finds further support for this approach in its survey of cases in which courts have considered the issue of subject matter jurisdiction after reviewing the administrative record, generally at the summary judgment stage. *See, e.g.*, *Or. Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977 (9th Cir. 2006) (finding on a motion to dismiss, but after reviewing the administrative record, that the defendant's policies were final within the meaning of the APA); *Northcoast Envtl. Ctr. v. Glickman*, 136 F.3d 660 (9th Cir. 1998) (finding on a motion for summary judgment that there was no final agency action).

1 APA's notice and comment requirements.  The second cause of action alleges that the sunset
2 review "violates OFPA because it allows substances to remain on the National List without full
3 board review, without a decisive vote to renew, and without renewal by the Secretary."  FAC ¶
4 133.  Defendants contend that these allegations are based on a misunderstanding of the APA and
5 OFPA.  The Court finds that resolution of the scope of the statutory requirements and the parties'
6 competing interpretations of the statutory provisions cited in the complaint is inappropriate on a
7 motion to dismiss.  Taking all reasonable inferences in Plaintiffs' favor, the Court finds the
8 complaint raises a plausible claim for relief, and thus denies the motion to dismiss under Rule
9 12(b)(6).

## IV. CONCLUSION

For the reasons described, the Court DENIES the motion to dismiss, and sets a case management conference for September 20, 2016 at 2:00 p.m. to discuss the scheduling of case deadlines.  The parties should meet and confer before the hearing to discuss whether they can agree on a proposed schedule, and are required to file a case management statement in accordance with the local rules.

**IT IS SO ORDERED.**

Dated:  9/8/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge